**EDWARD M. ROBINSON (CA Bar 126244)**
21515 Hawthorne Blvd, Suite 200
Torrance, CA 90503
Office: (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendants
*William Scott Pollay*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

WILLIAM SCOTT POLLAY,

Defendant.

Case No. 24-cr-00570-WLH-33

**DEFENDANT'S SENTENCING MEMORANDUM; EXHIBITS IN SUPPORT**

DATE: June 26, 2026
TIME: 10:00 a.m.
Courtroom of the
Honorable Judge Wesley L. Hsu

# TABLE OF CONTENTS

INTRODUCTION .......... 1
THE PRESENTENCE REPORT .......... 2
18 U.S.C. § 3553 ANALYSIS .......... 2
I. Nature and Circumstances of the Offense .......... 5
II. Personal History and Characteristics .......... 5
III. Post-Offense Rehabilitation .......... 5
IV. Deterrence .......... 6
V. Protecting the Public .......... 7
CONCLUSION .......... 7

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States*,
552 U.S. 38, 49 (2007)....................2

*Kimbrough v. United States*,
522 U.S. 85, 90 (2007)....................2

*Rita v. United States*,
551 U.S. 338 (2007)....................2

*Pepper v. United States*,
562 U.S. 476, 492 (2011)....................5

*Tapia v. United States*,
564 U.S. 319, 325 (2011)....................2

*United State v. Cole*,
622 F. Supp. 2d 632 (N.D. Ohio 2008)....................7

*United States v. Bryson*,
229 F.3d 425, 426 (2nd Cir. 2000)....................6

*United States v. Rodriquez*,
527 F.3d 221, 228 (1st Cir. 2008)....................2

**Statutes**

18 U.S.C. § 3553....................passim

**Other Authorities**

U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES, (2004)....................6

## INTRODUCTION

Mr. Pollay was born into violence and chaos. His father was an abusive alcoholic who, when drunk, would hit him and his brothers with his fists and with a belt when his father felt they had done something "wrong." Despite this violence, neither his mother nor grandmother made efforts to intervene and put an end to it. When Mr. Pollay was 15 years old his father abandoned the family. His mother was reduced to chasing his father down to try to get money to support the family.

Due to his violent upbringing and abandonment from his father, Mr. Pollay became an angry young man. Mr. Pollay found misplaced refuge in drugs and alcohol beginning around the age of 15. This terrible milieu of chaos and drug addiction has led Mr. Pollay to appear before this Court.

Despite this terrible upbringing, Mr. Pollay graduated from High School, obtained his certificate in welding, and was fully employed for most of the time up to his arrest. His personal history and characteristics are littered with drug addiction and relatively minor criminal convictions. His criminal history resembles that of so many members of our community who are lost and struggling with drug addiction. His behavior has been erratic and troubling, but there are no convictions for serious violence or serious drug offenses involving large amounts of narcotics. He is not a gang member, a cartel figure, or a wholesale supplier. Mr. Pollay's offense conduct is extraordinarily narrow and brief. His participation in the conspiracy lasted for 10 days, from January 3 to January 13, 2024.

Against this backdrop, there is hope for Mr. Pollay. He has been on the suboxone program in the Metropolitan Detention Center and for the first time since he was a young teenager, he is sober. He is thinking clearly. His employer is waiting for him to return. There is opportunity for redemption.

The Probation Office recommends a sentence of 188 months imprisonment based on a Total Offense level 31 with Criminal History Category VI. This recommendation is based on the rote application of the Sentencing Guidelines wherein Mr. Pollay is

deemed a Career Offender. In this paper, counsel requests that this Court disregard the methamphetamine guidelines and career offender guidelines for policy reasons and for the effect of an overstated criminal history. Counsel requests that this Court examine the nature and circumstances of this offense along with the need to promote justice and sentence Mr. Pollay to a term of 60 months in prison.

**THE PRESENTENCE REPORT**

Mr. Pollay does not object to the Presentence Report ("PSR").

**18 U.S.C. § 3553 ANALYSIS**

18 U.S.C. § 3553(a) requires that a sentencing court impose a sentence that is "sufficient but not greater than necessary" to achieve the goals of sentencing. *Kimbrough v. United States*, 522 U.S. 85, 90 (2007). The sentencing factors, which must be analyzed against the parsimony clause of 18 U.S.C. § 3553(a) represent the major sentencing considerations of "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 564 U.S. 319, 325 (2011). While the Guideline sentencing Range is a "starting point and initial benchmark," the Guidelines are not the sole, nor even the first among the factors that Congress has commanded the court to apply pursuant to Section 3553(a). *Gall v. United States*, 552 U.S. 38, 49 (2007). Instead, in reaching a decision on what constitutes an appropriate sentence, the district court should "consider all relevant factors" and "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriquez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis supplied.)

Although the Guidelines are the starting point in the Court's sentencing analysis, they are expected to yield an appropriate sentence. *Rita v. United States*, 551 U.S. 338 (2007). The Guidelines only come close to yielding an appropriate sentence if the Sentencing Commission fulfills its "important institutional role" to "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough*, at 107. The methamphetamine guideline does not reflect the Sentencing Commissions exercise of this function. As such, this Court

may conclude that its application may yield a sentence that is greater than necessary to achieve the goals of sentencing under 18 U.S.C. § 3553(a). Just like the crack cocaine guideline from *Kimbrough*, the methamphetamine guideline was not based on the Commissions gathering of empirical data and the deliberative consideration of its experts. The guideline merely tracked mandatory minimums that were enacted by Congress based on faulty premises and fears of harm that were not confirmed.

Mr. Pollay's base offense level is 24 per USSG §2D1.1(c)(8) as his count of conviction involved at least 50 grams but less than 200 grams of Methamphetamine. If the controlled substance had been cocaine, Mr. Pollay's Base Offense Level would be either 14 or 16 based on between 50 and 200 grams. Not considering the Career Offender adjustment, in criminal history IV, the discrepancy between the methamphetamine Base Offense Level range is 100-125 months for methamphetamine and either 37-46 or 46-57 months for cocaine.

In this case, the argument regarding the court's ability to disregard the crack cocaine guidelines applies here to methamphetamine. There is no empirical evidence that methamphetamine is appreciably different than other drugs like cocaine in the way it harms individuals or communities. Attached hereto as Exhibit A is a research paper titled, *Methamphetamine: Fact vs. Fiction and Lessons from the Crack Hysteria,* Hart, Csete and Habibi, Columbia University 2014. This paper details the lack of empirical study and scientific support that was replaced by hysteria in the fashioning of cocaine penalties and how history is repeating itself with the enactment of methamphetamine penalties devoid of any meaningful empirical study. In conclusion the report states: "Evidence presented in this report suggests that illicit ATS use, primarily methamphetamine use, has become the new crack cocaine with respect to sensational media reporting about the extent of ATS use and hyperbolic description of the disastrous consequences of methamphetamine addiction. It has taken nearly three decades for the public to come to a superficial understanding that the deleterious effects of crack cocaine were greatly exaggerated in mass media and government statements.

The monetary and human costs of our earlier misunderstandings about crack cocaine are incalculable. Today, unfortunately, much of the public information about methamphetamine has little foundation in evidence. Overblown worst-case anecdotes are usually disseminated by the popular press and accepted as sound evidence by an undiscerning public." *Hart, Csete and Habibi* at 29.

In the guideline sentencing context, the opinion by the Honorable Mark W. Bennet, of the Northern District of Iowa provides a compelling and exhaustive *Kimbrough* analysis. Order attached hereto as Exhibit B. In support of his order that the methamphetamine guidelines and not based on empirical data and are therefore excessive, Judge Bennett states: "While the reasoning is unknown, the Commission made 1 gram of methamphetamine equal to 2 grams of cocaine." "The level of harmfulness is difficult to measure, and many drug experts contend that methamphetamine is not the most harmful drug. (Citations) A study by David J. Nutt et al., Drug Harms in the UK: a multi criteria decision analysis, 376 THE LANCET 1558 (2010). "For legislative purposes, drugs have been mostly classified according to their addictive potency. Such classifications, however, lack a scientific basis." JK van Amsterdam et al, Ranking the harm of Alcohol, Tobacco and Illicit Drugs for the individual and the Population, 16 EUR. ADDICTION RESEARCH 202. 203-204 (2010) (ranking the mean harm scores of crack cocaine, heroin, tobacco, and alcohol higher than methamphetamine.)"

Mr. Pollay's Career Offender status, in combination with the methamphetamine guidelines as well as the "nature and circumstances" of the offense render a sentence that is significantly "greater than necessary" to promote the factors of sentencing in section 3553(a). The entirety of Mr. Pollay's criminal history is tied to his violent and chaotic upbringing. His drug addiction is made plain by the simple possession petty theft type misdemeanors that litter his past. The erratic stalking and misdemeanor threat convictions are further evidence of his addiction. Most importantly, the qualifying Carrer Offender priors and for relatively small-time drug offenses. There

are no significant crimes of violence in Mr. Pollay's past. The offense conduct supporting his guilty plea was over the course of only ten days. To impose a sentence of over fifteen years because of the rote application of the guidelines violates the parsimony clause section 3553(a) as it is "greater than necessary" to promote the factors of sentencing.

Attached hereto as Exhibit C is the "JSIN" analysis for defendants with a Total Offense Level of 21 in Criminal History Category VI. The average length of imprisonment for these defendants is 67 months. The median length is 72 months.

For these reasons, Mr. Pollay asks that this Court disregard the methamphetamine guidelines and sentence Mr. Pollay pursuant to an 18 U.S.C. §3553(a) analysis.

## I. Nature and Circumstances of the Offense

Mr. Pollay concurs with the offense conduct section of the PSR which outlines the nature and circumstances of the offense and is consistent with the factual basis in his plea agreement. It is important to note that Mr. Pollay is not a member of any gang or cartel.

## II. Personal History and Characteristics

Mr. Pollay's personal history presents a sad and all too familiar story. He had to live with drunkenness, violence and abandonment throughout his childhood. The cumulative impact of unresolved trauma and instability caused Mr. Pollay's descent into substance abuse. It is impressive, and cause for hope, that Mr. Pollay was able to graduate from high school, get a welding certificate and remain employed for the years leading to his arrest. At the time of his arrest Mr. Pollay was improving—while still in the throes of his addiction.

## III. Post-Offense Rehabilitation

"[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *Pepper v. United States*, 562 U.S. 476, 492 (2011);

*quoting United States v. Bryson*, 229 F.3d 425, 426 (2nd Cir. 2000). Mr. Pollay has been on the suboxone program at the MDC and is sober. He is making efforts to maintain his health and sobriety for the first time in his life. He is prepared to tell the Court about this transformation.

Thus, here, a critical factor for this Court to consider is Mr. Pollay's post-offense rehabilitation. The *Pepper* Court noted the ways in which continued rehabilitation informs all other sentencing factors, "in particular, to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training ... or other correctional treatment in the most effective manner.'" *Id*. at 491; *citing* 18 U.S.C. 3553 §§ (a)(2)(B)-(D). Finally, and "most fundamentally[,]" evidence of a defendant's most recent conduct provides the most up-to-date picture of the defendant's "history and characteristics." *Id*. at 491; *citing* 18 U.S.C. § 3553(a)(1).

**IV. <u>Deterrence</u>**

18 U.S.C. § 3553(a)(2)(B) requires that the Court consider the need for the sentence imposed to afford adequate deterrence to criminal conduct. While this Court must consider both general and individual deterrence, two very important examinations of the concepts must be considered. First, the anecdotal notion that longer sentences have a greater general deterrent effect is belied by empirical and academic findings. The United States Sentencing Commission has found that "[t]here is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high Guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." *See* U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES, at 15 (2004). To sentence Mr. Pollay to a term of more than 60 months incarceration in a Bureau of Prisons Facility is unnecessary and unjust

given the mandate 3553(a)(2)(B) and the alternatives to that type of incarceration available to this Court.

The second, and more relevant consideration deals with the ethical tension between general and individual deterrence. It is not right, given the individualized nature of sentencing, to imprison Mr. Pollay to a term of more than 60 months incarceration in a B.O.P. facility to set an example for others. As the district court stated in *United State v. Cole*, 622 F. Supp. 2d 632 (N.D. Ohio 2008), "[g]eneral deterrence uses a utilitarian calculation, subjecting defendants to longer periods of incarceration than retribution requires to 'send a message' to other potential offenders. Inherent in this general deterrence calculation is a tension between individual dignity and societal good, begging the question: Is it ethical to impose a greater-than necessary punishment upon an individual criminal defendant to protect society at large?" To make an example out of Mr. Pollay, based upon a misguided notion that others would not commit similar crimes if he were sentenced to a term of imprisonment is contrary to the individualized sentencing requirements resurrected post-*Booker* and calls into question the ethics of this type of sentencing as identified by the district court in *Cole*.

**V. <u>Protecting the Public</u>**

Given Mr. Pollay's transformation and his sobriety, a guideline sentence in this case is greater than necessary to protect the public from future crimes of Mr. Pollay.

**CONCLUSION**

For the reasons set forth above, as well as those set forth in the record of this case, counsel for Mr. Pollay respectfully requests that this Court impose a sentence of 60-months imprisonment.

Respectfully submitted,

DATED: June 5, 2026 By */s/ Edward M. Robinson*

Edward M. Robinson
Attorney for Defendant
*William Scott Pollay*